UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                        :

NATHANIEL GREEN,                                     :
                                                        :          11 Civ. 1349 (PAE)
                        Plaintiff,         :
            -v-                              :          <u>OPINION & ORDER</u>
                                                        :

G. NILES, SUPERINTENDENT et al.,      :

                        Defendants.       :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

Defendants Superintendent Gene Niles, Joanne Comeau, and the New York State Department of Corrections and Community Supervision move to dismiss the second amended complaint (the "Complaint") of *pro se* plaintiff Nathaniel Green ("Green"), which seeks $2 million in damages for claims under 42 U.S.C. § 1983 arising out of the alleged mishandling of his prison mail as retaliation for a complaint he had made about mail handling. For the following reasons, defendants' motion is granted and Green's Complaint is dismissed.

**I.     Background**[1]

Green is an inmate at Otisville Correctional Facility. His Complaint describes an episode in which defendant Comeau, a mailroom clerk at Otisville during the period at issue, allegedly mishandled two related pieces of his mail.[2]

---

[1] The Court's account of the underlying facts is drawn from Green's second amended complaint, dated September 27, 2011. *See* Decl. of Jeb Harben in Supp. of Defs.' Mot. to Dismiss (Dkt. 23), Ex. A. This document was never filed with the Clerk of Court, but defendants' motion responds to it, and treats it as the operative Complaint in this case. Because defendants accept this document as the operative Complaint, the Court has ordered it docketed, retroactive to September 30, 2011. Except where specifically referenced, no further citation to the Complaint will be made.

As background, Green alleges that he had filed a grievance against Comeau on October 22, 2010, complaining of delay in sending his mail. Thereafter, on October 31, 2010, Green submitted a disbursement form for $100, to be deducted from his inmate account and sent to Green's home. A check was issued by non-party Ms. House,[3] an employee at Otisville's business office, to be mailed to an address supplied by Green. However, on or about November 7, 2010, Green spoke with the intended recipient of the check and learned that the check had not been received. On November 8, 2010, Green attempted to resolve this issue with an inmate counselor, and visited the inmate grievance office in an attempt to get answers. After a grievance officer spoke informally with House and Comeau, Green completed a written "stop payment" form to cancel the $100 check, and submitted a new disbursement form, this time for a $150 check, to be sent to the intended recipient of the first check.

On November 12, 2010, the $150 was deducted from Green's inmate account, along with $5.10 to cover mailing and processing fees. Some two weeks thereafter, having not received confirmation of receipt of the $150 check, Green again visited the grievance office to inquire. Green learned that the "stop payment" order had not been processed as to the original $100 check, and that the $150 check had not yet been mailed. Green then requested that the $150 check be forwarded immediately to its intended recipient. Two weeks later, however, he spoke to the addressee, who had still not received either check.[4]

---

[2]  Green's prior two complaints referred to three such alleged episodes. In his second amended complaint, however, Green alleges only one incident, involving two pieces of mail.

[3] Green's prior two complaints name House as a defendant, the present Complaint does not.

[4] Green's first amended complaint claims that the original $100 check was received by the addressee on or about November 27, 2010; the second amended complaint does not specify whether that original check was ever received.

Green continued to inquire as to what had become of his mail. From a grievance officer who inquired on his behalf, Green learned that Comeau had, allegedly, admitted that she had mistakenly misplaced the $150 check; Green does not state whether that check was ever mailed or received. In fact, Green alleges, Comeau's "mistake" was a deliberate attempt to sabotage his mail, in retaliation for his earlier complaint against her.

Green alleges that the delay in sending out his checks has damaged relations between himself and his children, the checks' intended recipients. The resulting distress, Green claims, has left him unable to sleep or function normally.

Green asserts that the mishandling of his mail violated his rights under the First and Fourteenth Amendments, and was cruel and unusual punishment, and thus violates his Eighth Amendment rights. He also claims violations of unspecified rights under the Ninth Amendment. For these constitutional violations, Green claims $1 million damages. Green alleges that the mishandling of his mail evinces a degree of incompetence and malice such that he is entitled to punitive damages against Comeau.[5]

Courts in this Circuit have an obligation to construe *pro se* complaints to raise "the strongest arguments they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006). Here, Green's Complaint clearly denotes an intent to sue under 42 U.S.C. § 1983. The Complaint, liberally construed, raises claims that: (1) Green was retaliated against by defendant Comeau for complaining about the handling of his mail; (2) Green was subjected to cruel and unusual punishment under the Eighth and Fourteenth Amendments; and (3) Green was

---

[5] In total, Green seeks $2 million in damages, comprised of $1 million for "pain and suffering caused by the disruption of family ties"; $500,000 for the violation of his constitutional rights; and $500,000 in punitive damages.

deprived of property without due process of law under the Fourteenth Amendment, insofar as checks were drawn from his inmate account and then allegedly mishandled.[6]

---

[6] Green's Complaint asserts a retaliation claim against defendant Comeau, but not, in the Court's view, a stand-alone First Amendment claim based on the delay in sending out his mail. This is clear from the difference between Green's first amended complaint and the current Complaint. As presently pled, the Complaint articulates exclusively a retaliation theory; the previous iteration complained of mail tampering more generally. Case law in this Circuit does note a prisoner's right to the free flow of mail. *See, e.g.*, *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment"). The Second Circuit has stated that "incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Id.* Pleading such a claim requires "specific allegations of invidious intent." *Id.* Green's present complaint falls short of meeting these standards. He does not allege an ongoing practice of censorship, but merely a single episode involving delay in sending out two related pieces of mail; he does not make specific allegations of "invidious intent" but merely a conclusory claim of animosity; and there is no claim that his mail involved access to the courts or affected his legal representation.

In any event, the Court is aware of no case finding a First Amendment violation premised on an isolated instance of delay in processing non-legal mail, as opposed to a practice of opening and reading prisoner mail, or stanching the flow of mail entirely. *Compare Angulo v. Manny*, No. 11-cv-878, 2012 U.S. Dist. LEXIS 23088, at *10–11 (S.D.N.Y. Feb. 14, 2012) (dismissing claim for failure to plead invidious intent where return of inmate's letters was caused by mistake in prison mailroom); *and Bellezza v. Holland*, No. 09-cv-8434, 2011 U.S. Dist. LEXIS 76030, at *16–18 (S.D.N.Y. July 12, 2011) (declining to dismiss First Amendment claim where prisoner had adequately pled "an ongoing practice of censorship") *with Robinson v. N.Y. State Dep't of Corr. Servs.*, No. 08-cv-911, 2009 U.S. Dist. LEXIS 92294, at *29–36 (N.D.N.Y. Sept. 8, 2009) (no constitutional violation where prisoner's outgoing mail was delayed by regulation imposing waiting period on commissary transactions to buy stamps); *and Webster v. Fischer*, 694 F. Supp. 2d 163, 193 (N.D.N.Y. 2010) ("delay in delivery of a single piece of mail" due to possible mishandling insufficient to raise First Amendment claim); *and Wesolowski v. Washburn*, 615 F. Supp. 2d 126, 129 (W.D.N.Y. 2009) ("At most, [plaintiff] appears to have been inconvenienced, and to have had some delays in his outgoing mail. That is not enough to support a § 1983 claim."). It would, therefore, not "be clear to a reasonable [official]" that imposing a delay in the processing of two related pieces of mail, even if done intentionally, was "unlawful in the situation" here presented. *Nagle v. Marron*, 663 F.3d 100, 114 (2d Cir. 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). As a result, even if Green's Complaint were construed to raise a stand-alone First Amendment claim, defendants would be entitled to qualified immunity on such a claim.

On November 29, 2011, defendants moved to dismiss. They argue that: (1) Green has not plausibly pled any constitutional violation, because the conduct complained of does not implicate Green's constitutional rights; (2) Green has not plausibly alleged a claim of retaliation against defendant Comeau; (3) Green has not plausibly alleged the personal involvement of defendant Niles; (4) defendants are entitled to qualified immunity; (5) to the extent the state official defendants are sued in their official capacities, such claims are barred by the Eleventh Amendment; and (6) Green did not exhaust his administrative remedies under the Prison Litigation Reform Act before filing suit.

On or about February 10, 2012, Green submitted an opposition to defendants' motion. On March 2, 2012, defendants submitted a reply.

## II. Discussion

### A. Applicable Legal Standards – Rule 12(b)(6) and Section 1983

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Despite the well-established rule in this circuit that *pro se* submissions are to be liberally construed and interpreted to raise "the strongest arguments they suggest," *Triestman*, 470 F.3d at 474–75, the plausibility standard applies equally to *pro se* complaints. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *Okoh v. Sullivan*, No. 11-1303-cv, 2011 U.S. App. LEXIS 25117, at *2–3 (2d Cir. Dec. 19, 2011) (summ. order).

To state a claim for relief that is facially plausible, an allegation must be "more than an unadorned, the-defendant-unlawfully-harmed me accusation"; a claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct.

1937, 1949 (2009).  Accordingly, where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

In making that determination, the Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor."  *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (internal quotation marks and citation omitted).  On the other hand, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949; *see also Twombly*, 550 U.S. at 555 (court is "'not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The claims in Green's Complaint are brought under 42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).  "To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights."  *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011) (citing *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002) (per curiam)); *see also Ross v. Westchester Cnty. Jail*, No. 10-cv-3937, 2012 U.S. Dist. LEXIS 3502, at *26 (S.D.N.Y. Jan. 11, 2012).  A defendant's conduct must therefore be a proximate cause of the claimed violation in order to find that the individual defendant deprived the plaintiff of his rights.  *Ross*, 2012 U.S. Dist. LEXIS 3502, at *26 (citing *Martinez v. California*, 444 U.S. 277, 285 (1980)).  Additionally, where, as here, a plaintiff is seeking money damages against the defendants, the

"personal involvement of defendants in alleged constitutional deprivations is a prerequisite" to recovery under § 1983. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (citing *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).

### B. Personal Involvement of Defendant Niles

Because Green has, as a threshold matter, failed to plausibly allege the personal involvement of defendant Niles, the claims against Niles must be dismissed. Green argues that Niles, as Superintendent of Otisville, is liable for allowing negligent mailroom procedures to persist under his watch. However, "the mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under § 1983." *Styles v. Goord*, 431 F. App'x 31, 33 (2d Cir. 2011) (summ. order); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("mere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.") Green does not plead any facts suggesting Niles's personal involvement in the events complained of; indeed, beyond making the conclusory claim that Niles knew of all happenings within the prison walls, Green does not specifically allege how Niles was or could have been aware of the events at issue in this case. As such, Green has not plausibly pled Niles's personal involvement. The claims as against Niles are, therefore, dismissed.

### C. Green's Section 1983 Claims

As noted, the Court construes the Complaint to assert that (1) Green was retaliated against by defendant Comeau for complaining about the handling of his mail, in violation of the First Amendment; (2) Green was subjected to cruel and unusual punishment under the Eighth and Fourteenth Amendments; and (3) Green was deprived of property without due process of law

under the Fourteenth Amendment, insofar as checks were drawn from his inmate account and then allegedly mishandled. Each claim is addressed in turn.

### 1. Retaliation

Green primarily complains that the mishandling of his mail in November and December 2010 was in retaliation for his October 2010 complaint that defendant Comeau had mishandled his mail. "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show [] '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002))). To meet the requirement of adverse action, in turn, a plaintiff must show that the defendant's "retaliatory conduct . . . would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . . Otherwise, the retaliatory act is simply *de minimis*, and therefore outside the ambit of constitutional protection." *Dawes*, 239 F.3d at 492–93 (citations omitted); *Jones v. Harris*, 665 F. Supp. 2d 384, 397 (S.D.N.Y. 2009).

As an initial matter, Green's factual assertion that he had filed a formal grievance against Comeau in October 2010 appears, quite clearly, to be a recent fabrication. Both Green's original complaint (Dkt. 2) and first amended complaint (Dkt. 6) expressly state that Green contemplated filing a formal grievance against Comeau in October and November 2010 but declined to do so, waiting instead until December 2010 to file such a grievance. *See, e.g.*, Dkt. 2 at ECF p. 7 ("I did not grieve her nor the matter and simply allowed the matter to be informally handled"); *Id.* at ECF p. 17 ("I informed them that I had intended to file a grievance about the whereabouts of my

funds and certified mail but that since [the prison counselor] was so helpful and we got to the bottom of the issue . . . I would for the fourth time reserve my position and allow the matter to be handled informally"); *Id.* at ECF p. 22 ("On 12-21-10, I proceeded to file a formal grievance in regards to this matter").

Green's second amended complaint, however, reverses course and tells a completely different story. It claims that he did, in fact, file a formal grievance in October 2010. *See* Harben Decl., Ex. A at ECF p. 3–4 ("On the 22nd day of October, 2010, the plaintiff lodged a complaint with the grievance office against the def. MRS. J. COMEAU . . . The plaintiff contends that after the filing of said complaint the defendant, MRS. COMEAU began to retaliate against him."). Notably, shortly before Green's second amended complaint was served on the defendants, the parties appeared before the Hon. Richard M. Berman, to whom this case was then assigned, and Green received, both in a letter preceding that conference and at the conference itself, a preview of defendants' arguments in their motion to dismiss. One such argument was that any mishandling of Green's mail in November and December 2010 could not form the basis of a retaliation claim, because the protected activity Green now asserts—the filing of a formal grievance—had not occurred until late December 2010, after any allegedly-retaliatory conduct occurred. Under these circumstances, it appears highly probable that Green's revised portrait of the sequence of events in his second amended complaint reflects not a genuinely refreshed recollection, but an attempt to change the pleading so as to salvage his case.

The Court is dubious that Green's newfound assertion as to the timing of his grievance should be credited, so as to defeat a motion to dismiss. Green has made patently contradictory factual allegations across his Complaints as to the timing of his 2010 grievance. Not only is his new claim utterly irreconcilable with his earlier sworn complaints, but it was made under

circumstances under which Green had an obvious motive to invent it: As he had been notified, his retaliation claim was, otherwise, poised for dismissal. And Green has not offered any explanation for changing his factual claims.

It is, further, well-settled that, although the Court must accept as true all of the factual allegations set out in a plaintiff's complaint, draw inferences from those allegations in the light most favorable to the plaintiff, and construe a *pro se* complaint liberally, "the court need not accept as true allegations that conflict with a plaintiff's prior allegations." *Dozier v. Deutsche Bank Trust Co. Ams.*, No. 09-cv-9865, 2011 U.S. Dist. LEXIS 100467, at *5 (S.D.N.Y. Sept. 1, 2011) (citing *Colliton v. Cravath, Swaine & Moore LLP*, No. 08-cv-400, 2008 U.S. Dist. LEXIS 74388, at *19 (S.D.N.Y. Sept. 24, 2008) ("Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint a court is authorized to accept the facts described in the original complaint as true.")); *see also Palm Beach Strategic Income, LP v. Stanley P. Salzman, P.C.*, No. 10-cv-261, 2011 U.S. Dist. LEXIS 46867, at *15–22 (E.D.N.Y. May 2, 2011) (declining to accept plaintiff's new allegations which conflicted with those in three previous versions of plaintiff's complaint and granting defendant's motion to dismiss); *Wallace v. New York City Dep't of Corr.*, No. 95-cv-4044, 1996 U.S. Dist. LEXIS 22368, at *4 (E.D.N.Y. Oct. 9, 1996). This is such a case. The Court therefore does not credit Green's factual allegation that he filed a grievance against Comeau in October 2010. Accordingly, Green has failed to plead that *any* of the claimed retaliatory conduct—which allegedly occurred in October and November 2010—occurred *after* he engaged in the protected First Amendment activity of filing a grievance. On these facts, Green's retaliation claim is patently implausible, and is dismissed on this basis.

However, even if Green's factual allegation were credited, his First Amendment claim would still merit dismissal, because Green has failed to allege that the retaliatory acts directed at him were sufficiently serious to reach constitutional dimension. Here, Green claims that the alleged delay in the processing of his mail was an adverse action undertaken in response to his grievance against defendant Comeau. Courts in this circuit have, however, held that limited withholding or delay of a prisoner's mail does not constitute an adverse action sufficient to support a retaliation claim. *See Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 374 (S.D.N.Y. May 24, 2011) (no adverse action where defendant temporarily withheld a letter from plaintiff's wife); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. Mar. 31, 2010) ("Courts in this circuit have held that claims of mail tampering do not constitute adverse action."); *Islam v. Goord*, No. 05-cv-7502, 2006 U.S. Dist. LEXIS 71853, at *21–22 (S.D.N.Y. Sept. 29, 2006) ("Plaintiff also suggests that [a defendant's] alleged tampering with his family and legal mail was retaliatory. However, this is not the type of conduct that would deter an ordinary individual from exercising his constitutional rights. Plaintiff does not allege that he suffered any injury as a result of the alleged tampering, and therefore these isolated instances of mail tampering are not adverse actions supporting a cause of action for First Amendment retaliation."); *Battice v. Phillip*, No. 04-cv-669, 2006 U.S. Dist. LEXIS 53407, at *19 (E.D.N.Y. Aug. 2, 2006) (Defendant's "failure to deliver [plaintiff's] mail on one occasion does not constitute the type of conduct that would deter an ordinary individual from exercising his constitutional rights. [Plaintiff] does not allege, much less present any evidence to show, that he suffered any injury as a result of the minor delay in receiving one piece of mail. Even if intentional, this isolated incident is simply *de minimis* and therefore outside the ambit of constitutional protection.") (internal quotation marks omitted); *Rivera v. Pataki*, No. 04-cv-1286, 2005 U.S. Dist. LEXIS 2747, at *67–68 (S.D.N.Y. Feb. 14,

[11]

2005). Green's retaliation claim, based on similar delays in mail processing must, therefore, be dismissed as well.[7]

### 2. Cruel and Unusual Punishment

Green also claims that he was subject to cruel and unusual punishment by virtue of the unwarranted and retaliatory delays imposed on his outgoing mail. To establish a claim of cruel and unusual punishment cognizable under the Eighth Amendment, a claimant must satisfy a two-part inquiry consisting of both an objective and a subjective element. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (citing *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991)). The objective element focuses on the harm done in light of "contemporary standards of decency," *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009), and asks whether "the deprivation alleged is sufficiently serious or harmful enough to reach constitutional dimensions." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal citations omitted). To establish the subjective element of an Eighth Amendment claim, a plaintiff must show that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." *Wright*, 554 F.3d at 268 (quoting *Blyden*, 186 F.3d at 262) (additional internal quotation marks omitted)).

Here, although Green's Complaint alleges numerous errors by Comeau and repeatedly impugns her competence, it does not allege any fact from which the Court could plausibly conclude that Comeau acted wantonly under the circumstances. Indeed, although the Complaint alleges that the delay in sending out his checks caused Green stress, and caused his relationship

---

[7] According to his prior two complaints, Green himself did, in fact, file a grievance against defendant Comeau, after the alleged mail withholding. The Court's adverse action analysis is not premised on this fact. The inquiry is an objective one, an adverse action can be found "even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Gill*, 389 F.3d at 381.

with his children to deteriorate, there is no indication whatsoever that Comeau was or could have been aware of these consequences. There is no factual allegation from which the Court can infer that Comeau understood that withholding Green's mail would cause him particular distress or difficulty. Green therefore has not plausibly pled that Comeau acted "wantonly" under the circumstances in allegedly withholding his mail. His claim of cruel and unusual punishment is, therefore, dismissed.

### 3. Deprivation of Property

Finally, the Court construes Green's Complaint to claim a violation of the Fourteenth Amendment, based on the possibility (the Complaint is silent on this point) that the money debited from his inmate account never reached its intended beneficiary. However, a prison's loss of an inmate property "whether intentional or negligent—will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.'" *Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009) (summ. order) (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)); *see also Vogelfang v. Capra,* No. 10-cv-3827, 2012 U.S. Dist. LEXIS 33874, at *40–41 (S.D.N.Y. Mar. 13, 2012). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action pursuant to N.Y. Comp. Codes R. & Regs. tit. 7, § 1700.3(b)(4)." *Davis*, 311 F. App'x at 400 (citing *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)); *see also Love v. Coughlin*, 714 F.2d 207, 208–09 (2d Cir. 1983) (New York post-deprivation remedies adequate to preclude prisoner's due process claim for loss of personal property). Accordingly, even if any defendant was responsible for a loss of money debited from Green's account, that injury is not cognizable under § 1983.

### D.   Eleventh Amendment Immunity

Green's Complaint does not specify the capacity in which the defendants are sued. The Complaint is susceptible of a reading that the defendants are sued in their official capacities, as Green repeatedly refers to their titles throughout the complaint. *See, e.g.*, Harben Decl. at ECF p. 3 (listing defendants and their official positions); *id.* (in text of allegations, referring to defendant Comeau as "J. COMEAU, (INSTITUTIONAL MAILROOM CLERK)"); *id.* at ECF p. 8 ("MRS. COMEAU, an employee of the NEW YORK DEPARTMENT OF CORRECTIONAL SERVICES, showed a complete disregard for the duties in which she was intrusted [sic] to perform with diligence"). Because the Court has found the Complaint to be implausibly pled in substance, the question of the capacity in which defendants are sued need not be resolved. However, to the extent that Green names the defendants in their official capacities, all such claims would, independently, have to be dismissed, because claims for money damages against state employees in their official capacities are deemed claims against the state itself, and are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Dube v. State Univ. of New York*, 900 F.2d 587, 594–95 (2d Cir. 1990), *cert. denied*, 501 U.S. 1211 (1991); *Brims v. Ramapo Police Dep't*, No. 11-cv-712, 2011 U.S. Dist. LEXIS 152760, at *19 (S.D.N.Y. Dec. 23, 2011).

### E.   Leave to Replead

A court should generally grant a *pro se* plaintiff "leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal citations and quotation marks omitted). Here, however, Green has submitted two amended complaints, for a total of three complaints. He has thus far failed to state a claim, and the Court is unpersuaded that a third amended

complaint would fare any better. Further, Green's second amendment was undertaken after Green had gained a preview of defendants' arguments in support of a motion to dismiss, and the present Complaint reflects at least one specific factual change that, circumstantially, appears to have been an invention made in response to the Court's identification of factual deficiencies in Green's pre-existing pleading. In such circumstances, the Court declines to grant Green leave to file a third amended complaint.

## CONCLUSION

For the foregoing reason, defendants' motion to dismiss is granted. The Clerk of Court is directed to terminate the motion at docket number 21 and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 23, 2012
       New York, New York